IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

STUART EDWARD PAYNE, III          )
                                  )
        Plaintiff,                )
                                  )
            v.                    )      1:05cv1446 (JCC)
                                  )
FAIRFAX COUNTY,                   )
                                  )
        Defendant.                )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion for summary judgment.  For the reasons stated below, the Court will grant Defendant's motion in full.

**I. Background**

This case arises out of an employment dispute that implicates the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and the Fairfax County Human Rights Ordinance.

Plaintiff-employee, Stuart Edward Payne, III began employment as an automobile mechanic with Defendant-employer, Fairfax County's Department of Vehicle Services (DVS) in November 1998.  Plaintiff originally worked at Defendant's garage in Newington, Virginia, then accepted a transfer to the Jermantown facility, and was subsequently transferred at his request to the West Ox Road facility in Fairfax, Virginia.

-1-

During his employment with Fairfax County, Defendant was diagnosed with a panic disorder, irritable bowel syndrome, and Epstein-Barr disease.[1]  These various conditions required Plaintiff to regularly miss work for which he was scheduled. After significantly depleting his sick leave, Plaintiff filed the proper certification forms to qualify for leave under the FMLA, which provides for an annual 480 hours (or 12 weeks) of unpaid leave with position preservation so long as the absence is supported by a medical doctor.

On July 28, 2002, Plaintiff was notified that he exhausted all 480 hours of his available FMLA leave for the time period from October 1, 2001 through September 30, 2002.  In September 2002, Plaintiff requested that his condition be accommodated, stating: "I just want to make sure if I have to come in late or leave early or miss a day that I can keep my job."  (Deft.'s Ex. 7).  After exhausting both personal leave and FMLA leave, Plaintiff's intermittent, unplanned absences continued.  Defendant notified Plaintiff that, under County policy, "the decision to continue the employment of an employee whose absences exceed the 480-hour FMLA entitlement rests with the department head."  (Deft.'s Ex. 8).  Plaintiff was further

---

[1]According to Plaintiff, Epstein-Barr disease is a serious health condition and disorder involving a chemical imbalance resulting in fatigue, weakness, a desire to sleep, and a locking of joints and limbs.

advised that his attendance was critically important to the mission of the DVS.

For the period October 1, 2002 through September 30, 2003, Plaintiff used 419.5 hours of his 480 hour entitlement to FMLA leave.  For the period October 2, 2003 through September 30, 2004, Plaintiff exhausted his 480 hours of FMLA leave as of August 3, 2004 and continued to have intermittent absences from work.  On August 20, 2004, Plaintiff requested sick leave for the period from August 20 through September 30, 2004, and this request was denied.  On September 15, 2004, Plaintiff voluntarily retired from County service, and two days later, unaware of this retirement, Defendant offered him the option of resigning from his job, with an effective date not later than December 21, 2004.

In the six years of his employment, both parties detail several allegations of Plaintiff's adequacy (or lack thereof), competency (or lack thereof), and insubordination.  The Court will not reiterate the numerous incidents that each party cites in support of its position, but most notable are the following: (1) an incident of Plaintiff's insubordination in which he tells his employer to "kiss his hairy [testicles]" and "your family is going to wonder what happened to you;" (2) Plaintiff smashing his radio on the ground after an altercation with his co-worker regarding the volume; and (3) general allegations of co-workers'

and employers' lack of sympathy and discretion regarding
Plaintiff's ailments.

Plaintiff filed a Complaint in this Court alleging that
the County: (1) interfered with his leave rights under the FMLA
(Count I); (2) engaged in discriminatory or retaliatory discharge
against Payne for exercising his rights under the FMLA (Count
II); (3) failed to accommodate Payne's disabilities under the ADA
and the Fairfax Human Rights Ordinance (Count III); (4) subjected
Payne to disparate treatment and discharged him in violation of
the ADA and the Human Rights Ordinance (Count IV); (5) engaged in
retaliatory discharge against Payne for exercising his rights
under the ADA (Count V); and (6) subjected Payne to harassment
and a hostile work environment in violation of the ADA (Count
VI).  Defendant has filed a motion for summary judgment on all
counts.  This motion is currently before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record
shows that "there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter of
law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications &
Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations
omitted).  In reviewing the record on summary judgment, "the
court must draw any inferences in the light most favorable to the

-4-

non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs*., 933 F.2d 1253, 1259 (4th Cir. 1991)(citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248-52. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248.

### III.   Analysis

A.   Count I - Interference with Leave Rights under FMLA

In recognition of the lack of job security for employees who have serious health conditions, Congress enacted the Family and Medical Leave Act in 1993.  29 U.S.C. § 2601(a). In this legislation, Congress sought "to entitle employees to take reasonable leave for medical reasons" and to accomplish this "in a manner that accommodates the legitimate interests of employers."  29 U.S.C. § 2601(b).  Employees covered by the FMLA who take a leave of absence for medical reasons qualify for numerous substantive entitlements, namely, "a total of 12 workweeks of leave during any 12-month period" for health-related matters and have a right "to be restored by the employer to the position of employment [or an equivalent position] held by the

employee when the leave commenced."  29 U.S.C. §§ 2612(a)(1), 2614(a)(1).  Furthermore, any leave taken under the FMLA "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced."  However, the employee is not entitled to any additional benefits which the employee would not have been entitled had the employee not taken the leave.  29 U.S.C. § 2614(a)(2)-(3).  Simply stated, the FMLA maintains the *status quo* by ensuring that the employee is entitled to nothing less and nothing more than he would be had he not taken the leave.

Plaintiff Payne contends that Defendant interfered with his rights under FMLA since he did not receive the benefits he otherwise would have received, although the Complaint does not specify which benefits Plaintiff claims to have been denied.  It is undisputed that Plaintiff exhausted 480 hours of leave in the 2001-2002 and 2003-2004 years, and it is further undisputed that Plaintiff utilized 419.5 hours of FMLA leave in the year 2002-2003 year (and had access to the full 480 hours).  There is no evidence that Plaintiff ever received anything but full access to total 480 hours of FMLA leave during the time periods at issue, and therefore, summary judgment is appropriate as to any claim that Plaintiff did not receive his FMLA leave.  However, in addition to FMLA leave, Plaintiff states that he was denied, *inter alia*, benefits such as group life insurance, health

insurance, disability insurance, sick leave, annual leave and
vacation, holiday pay, leave without pay, and use of donated
leave.

At this point, Plaintiff has not set forth any evidence
vaguely supporting the notion that he was ever denied insurance
or access to insurance, whether group life, health, or for
disability, due to his taking FMLA leave.  Additionally,
Defendant has persuaded this Court that the determination of
whether to allow use of donated leave is completely
discretionary, and that such leave is not a benefit to which
Plaintiff was entitled.  Accordingly, there is no dispute of
material fact as to the life, health, or disability insurance
claims, as well as the donated leave, and summary judgment is
appropriate for these claims.  Therefore, what remains under
Count I is the issue of whether Plaintiff was denied the benefits
of his accrued sick leave, annual leave, holiday pay, and leave
without pay.

As stated above, § 2614 of the FMLA requires that any
leave taken under the FMLA "shall not result in the loss of any
employment benefit accrued prior to the date on which the leave
commenced."  29 U.S.C. § 2614.  According to County policy, such
"employment benefit" clearly encompasses accrued leave, whether
sick or annual, and any accrued or unpaid overtime or holiday
pay.  At oral argument, the Court asked each party whether

–7–

Plaintiff accrued any leave or pay which he either did not utilize or for which he never received compensation.  Both parties responded that it were not aware of any such leave.  This agreement by the parties resolves any remaining dispute of fact as to whether Plaintiff was denied any accrued leave or overtime payment.  Since Plaintiff received the full benefit of any leave or compensation to which he was entitled, a reasonable trier-of-fact could not find that Plaintiff was denied any such benefit under the FMLA, and summary judgment is therefore appropriate as to the remaining issues under Count I.

B. Count II- Retaliatory/Discriminatory Discharge under FMLA

Section 2615(a)(2) of the FMLA states that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615.  In Count II of the Complaint, Plaintiff claims that he was discriminated or retaliated against for having availed himself of the FMLA leave.

Defendant understandably limits its discussion to the "discharge" of Plaintiff since Count II's title only refers to discharge, but Plaintiff provides a list of additional adverse actions such as: (1) demanding further certification of his already substantiated medical leave; (2) denying his transfer and accommodation requests; (3) denying him the ability to make up

-8-

hours in other time slots; and (4) denying him use of donated leave.  (Compl., ¶ 123)

The Fourth Circuit has stated that in order to establish a prima facie case of retaliation under FMLA, a plaintiff must show that (1) he engaged in protected activity, (2) the employer took an adverse action, and (3) the adverse action was causally related to the plaintiff's protected activity.  *Cline v. Wal-Mart Stores*, 144 F.3d 294, 301 (4th Cir. 1998).  In our case, the first element is not disputed, as Plaintiff clearly engaged in protected activity by requesting leave under the FMLA.  Therefore, this Court's analysis will focus on the second and third elements.

The Fourth Circuit has never addressed what constitutes an "adverse action" in order to establish retaliation under the Federal and Medical Leave Act.  However, the Fourth Circuit has addressed this exact issue with respect to retaliation claims under Title VII in stating that "adverse actions" are only those resulting in an adverse effect on the terms, conditions, or benefits of employment.  *Gunten v. Maryland*, 243 F.3d 858 (4th Cir. 2004); *Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 293, 242 (4th Cir. 1997).  Since the Fourth Circuit has already demonstrated a desire to streamline its FMLA analysis

with its standard Title VII analysis,[2] this Court imports the
Title VII definition of adverse action to the FMLA as well.

Therefore, the Court must first determine whether the
actions alleged by Plaintiff resulted in an adverse effect on the
terms, conditions, or benefits of employment.  The Court will
first address the alleged discharge of Plaintiff, and then the
remaining "adverse actions" alleged by Plaintiff.

As to the discharge, Defendant argues that Plaintiff
was never discharged since he voluntarily retired on September
15, 2004 before any termination occurred.  Since Plaintiff was
retired, he could not have been discharged and thus no adverse
action ever took place.  Plaintiff does not dispute that the
alleged termination occurred after the retirement, but instead
argues that the discharge is an adverse action since Plaintiff's
retirement was anything but voluntary since Plaintiff effectively
had no choice but to retire due to the hostile work environment
from his co-workers.  This position is untenable.  Plaintiff
cannot coherently argue on one hand that he was fired in
retaliation *by his employer* because he engaged in a protected
activity and on the other hand contend that he retired, but such
retirement was involuntary due to the harassment *by his co-
workers*.  Plaintiff therefore admits that he was never

---

[2] *Cline,* 144 F.3d at 301("Although we have not specifically addressed
the elements of a prima facie case of retaliation under the FMLA, we have
articulated a three-part analysis to be used for cases of retaliation under
Title VII. . . we believe this analysis to be applicable to the FMLA.")

discharged, and even if he was somehow "constructively" discharged, such action was due to his co-workers, not his employer.  Therefore, without a discharge by the employer (and thus no adverse action), summary judgment is appropriate as to whether any discharge of Plaintiff constituted retaliation in violation of FMLA.

However, Plaintiff's additional adverse actions still remain; specifically, (1) Defendant's denial of transfer and accommodation requests, (2) Defendant's refusal to allow Plaintiff to "make up" time during other shifts, (3) Defendant's demand of further certification of his medical leave, and (4) Defendant's denial of the use of donated leave.  These actions by the County clearly affect the terms, conditions, and benefits of Plaintiff's employment, and accordingly, the second element of the prima facie case is satisfied with respect to these actions.

Next, Plaintiff's claims satisfy the third requirement of the prima facie case that the adverse actions be causally related to the protected activity (*i.e.* requesting FMLA leave). To establish this element, the Fourth Circuit stated that it is sufficient that the adverse action occurred in temporal proximity to the protected activity.  *Williams v. Cerberonics*, *Inc.* 871 F.2d 452, 457 (4th Cir. 1989).  As the Fourth Circuit stated in *Williams*:

> Appellant's proof of a causal connection between the protected activity and her

> discharge essentially was that she was fired
> after her employer became aware that she had
> filed a discrimination charge.  While this
> proof far from conclusively establishes the
> requisite causal connection, it certainly
> satisfies the less onerous burden of making a
> prima facie case of causality.

*Williams*, 871 F.2d at 457.  Using this precedent as guidance in

the instant case, Plaintiff engaged in the protected activity

(requesting FMLA leave) at approximately the same time that the

alleged adverse actions occurred.  Pursuant to the low threshold

articulated by the Fourth Circuit in *Williams,*[3] this connection

is sufficient to satisfy the requisite causality required to

establish a prima facie case.  Accordingly, Plaintiff has

satisfied all the requisite elements for a prima facie case.

        Having established a prima facie case of retaliation,

the burden shifts to the defendant to articulate a legitimate,

non-discriminatory business reason for the adverse actions.

Defendant has articulated such reasons for its actions.  First,

as to Defendant's denial of a transfer to another more secluded

bay, Defendant has provided that no such bay exists, and that

Plaintiff had already been placed at the most secluded bay of any

DVS facility.  Second, as to Defendant's refusal to allow

Plaintiff to make up time at other shifts, Defendant has stated

---

[3]Further borrowing from the Fourth Circuit's Title VII jurisprudence in engaging in a retaliation claim analysis under FMLA, the Court will follow the Fourth Circuit's articulation of the low threshold for a prima facie case.

that it has no policy or provisions allowing for an employee to "make up" time, and furthermore, Plaintiff has never asked to be transferred to another shift.  Third, as to Defendant's requirement of certification to substantiate Plaintiff's medical leave, Defendant has argued that the FMLA allows an employer to request such medical certification.  *See, e.g.,* 29 C.F.R. 825.310.  Finally, as to Defendant's denial of donated leave, Defendant has stated that the County's policy in allowing the use of donated leave is wholly discretionary, and therefore, it was within its authority to deny its usage here.

For these reasons, this Court finds that Defendant has satisfied its burden, and therefore, the burden shifts to Plaintiff to articulate why these reasons are pretextual.  In his brief and oral argument, Plaintiff did not persuade this Court that these reasons were a pretext for retaliation, providing only mere allegations and citing no evidence of a retaliatory motive; no evidence of a more secluded bay to which he could be transferred; no evidence of a request by Plaintiff to have his shift transferred; no evidence of any County policy allowing employees to "make up" leave; no evidence that Defendant's request of additional certification was pretextual; and no evidence that denying donated leave was not discretionary.  In the face of any evidence to the contrary other than Plaintiff's mere allegations, this Court must rule that Plaintiff has failed

to establish a genuine issue of material fact as to whether
Defendant Fairfax County retaliated against Plaintiff, and
summary judgment is proper as to Count II.

C.  The Applicability of the ADA (Counts III-VI)

        Plaintiff's remaining Counts III through VI are under
the Americans with Disabilities Act.  The ADA provides a cause of
action for disability discrimination for a "qualified individual
with a disability," defined as "an individual with a disability
who, with or without reasonable accommodation, can perform the
essential functions of the employment position that such
individual holds."  42 U.S.C. 12111(8).  Defendant argues that
the ADA is inapplicable here since Payne is not a "qualified
individual" within the meaning of the Act.  First, Defendant
submits that Plaintiff is barred from claiming that he is a
qualified individual by his claim of being disabled under the
Social Security Act.  Second, Defendant contends that Plaintiff
is not a qualified individual since he cannot perform the
"essential" duties required of his employment.  Accordingly,
Defendant contends that the summary judgment should be granted on
Counts III through VI.

i.  Whether Plaintiff's claims of disability under the
    Social Security Act bar his claims under the ADA.

        The Social Security Disability Insurance (SSDI) program
provides benefits to a person with a disability so severe that he
is "unable to do [his] previous work" and "cannot . . . engage in

-14-

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Seemingly to the contrary, as stated above, the ADA provides a cause of action for disability discrimination for those that can "perform the essential functions" of their job, including those who can do so only "with reasonable accommodation." 42 U.S.C. § 12111(8). The factual contentions arising out those seeking relief under both statutes roughly appear to be "I cannot work" (in order to receive SSDI benefits) and "I can work" (to establish ADA discrimination). As a result, a potential inconsistency arises.

In this case, Defendant argues that since Plaintiff has already successfully maintained that he cannot "engage in any other kind of substantial gainful work" in successfully receiving SSDI benefits, he should be estopped from asserting that he can perform essential functions of his job with reasonable accommodations.

Fortunately, the Supreme Court has visited this precise issue of a plaintiff's potentially conflicting contentions in receiving SSDI benefits and also seeking relief under the ADA. In *Cleveland v. Policy Management Systems Corp.,* the Supreme Court rejected any estoppel or presumption arising against the plaintiff, but instead held:

> a plaintiff's sworn assertion in an application for disability benefits that [he] is, for example, "unable to work" will appear to negate an essential element of her ADA case

> – at least if he does not offer sufficient
> explanation. For that reason, we hold that an
> ADA plaintiff cannot simply ignore the
> apparent contradiction that arises out of the
> earlier SSDI total disability claim, rather,
> she must proffer sufficient explanation.

526 U.S. 795, 806 (1999). Accordingly, any argument of estoppel

by the County is inappropriate. Instead, the Court must proceed

under the standard summary judgment framework in evaluating

Plaintiff's explanation in an attempt to reconcile the two

claims. *See EEOC v. Stowe-Pharr Mills, Inc.* 216 F.3d 373 (4th

Cir. 2000). The sufficiency of the required explanation is to be

measured as follows:

> When faced with a plaintiff's previous sworn
> statement asserting "total disability" or the
> like, the court should require an explanation
> of any apparent inconsistency with the
> necessary elements of an ADA claim. To defeat
> summary judgment, that explanation must be
> sufficient to warrant a reasonable juror's
> concluding that, assuming the truth of, or the
> plaintiff's good faith belief in, the earlier
> statement, the plaintiff could nonetheless
> "perform the essential functions" of her job,
> with or without "reasonable accommodation."

*Cleveland*, 526 U.S. at 807.

In our case, Plaintiff summarily explains his

contradicting assertions by stating that the Social Security Act

does not take "reasonable accommodation" into account.[4] Thus, no

inconsistency exists since his statement that he was "unable to

---

[4]The Court would have preferred that Plaintiff complete the analysis
other than simply stating that "the Social Security Act does not take account
of the duty to accommodate." (Pltf.'s Opp, 24). Instead, the Court will
reluctantly complete the analysis.

work" in seeking SSDI benefits does *not* mean "unable to work, even without reasonable accommodation."  Guided by Fourth Circuit precedent, this explanation alone is sufficient to survive summary judgment between Plaintiff's SSDI and ADA claims.  *See Stowe-Pharr Mills, Inc.,* 216 F.3d at 378(finding a sufficient explanation by a plaintiff who believed she could work with reasonable accommodation, but did not refer to this possibility of reasonable accommodation in her SSDI application since she was not required); *see also Fox v. GMC*, 247 F.3d 169, 178 (4th Cir. 2001).  Since Plaintiff has provided sufficient explanation that his grant of SSDI benefits is not inconsistent with his claim of ADA relief, this Court cannot find the absence of a  genuine dispute of material fact as to whether Plaintiff is a qualified individual with a disability.

In making this conclusion, the Court does not address the merits of Plaintiff's claim as to whether he is a "qualified individual with a disability" within the meaning of the statute (*see* discussion *infra* Sec. III.C.ii.), but only concludes that the grant of SSDI benefits does not alone preclude this conclusion.

ii.  Whether Payne is a "Qualified Individual with a Disability" under the ADA (Counts III-VI)

Defendant argues that even if Plaintiff provides a sufficient explanation of any inconsistency between his SSDI claims and his ADA claims, he still does not meet the definition

-17-

of a "qualified individual with a disability."  To prove that he

is qualified, Plaintiff must produce evidence that (1) he could

"perform the essential functions of his job," or (2) if not,

whether "any reasonable accommodation by [his] employer would

enable [him] to perform those functions."  *Tyndall v. National*

*Educ. Ctr. Inc.,* 31 F.3d 209, 213 (4th Cir. 1994).

### (1) Can Payne perform the essential functions of his job?

As to whether Plaintiff could perform the essential

functions of the job, this Court will assume, for purposes of

this inquiry only, that Plaintiff's work performance was

adequate.  However, our inquiry does not end there.  "In addition

to possessing the skills necessary to perform the job in

question, an employee must be willing and able to demonstrate

these skills by coming to work on a regular basis."  *Tyndall,* 31

F.3d at 213 n.1.  A regular and reliable level of attendance is

an essential function of one's job.  *Halperin v. Abacus Tech.*

*Corp.*, 128 F.3d 191, 199 (4th Cir. 1997); *Lamb v. Qualex, Inc.,*

33 Fed. Appx. 49 (4th Cir. 2002); *see also Carr v. Reno*, 23 F.3d

525, 529 (D.C. Cir. 1994)(holding that "coming to work regularly"

is an "essential function"); *Jackson v. Veterans Admin.*, 22 F.3d

277, 279-80 (11th Cir. 1994)(holding that an employee with a

history of sporadic unpredictable absences was not otherwise

unqualified); *Law v. United States Postal Serv.,* 852 F.2d 1278,

1279-80 (Fed. Cir. 1988)(holding that a regular and reliable

-18-

level of attendance is a necessary element of most jobs). Thus, an employee who cannot meet the attendance requirements of his job cannot perform the essential functions of his job, and therefore, cannot be a "qualified individual" under the Americans with Disabilities Act.

It is undisputed that Plaintiff held a job that required his regular attendance at work (working at home was not an option), and that such attendance was essential. In fact, Payne knew from the outset that attendance was essential due to his signed statement acknowledging his status as an "essential employee" who is required to report to work even when inclement weather led the County to permit its other employees to take unscheduled leave. Furthermore, Plaintiff was repeatedly encouraged to minimize unscheduled absences, reminded of the County attendance policy, and informed that if he exceeded his FMLA entitlement, his continued employment would be re-examined. His performance evaluations consistently recommended that Payne should try to minimize his absenteeism whenever possible.

While neither Plaintiff nor Defendant were able to provide at oral argument how much time Plaintiff missed outside of the FMLA leave, it is undisputed that Plaintiff exhausted his 480 hours of FMLA leave in the years 2001-2002 and 2003-2004, and in the year 2002-2003, Plaintiff exhausted 419.5 hours of FMLA leave. Taking this FMLA leave into account, it is undisputed

that Plaintiff was continuously and unpredictably absent from
work.  However, as this Court has stated in its discussion of
Counts I and II, the FMLA prohibits any discrimination or
retaliation against an employee taking FMLA leave and further
requires that leave taken pursuant to the FMLA "shall not result
in the loss of any employment benefit accrued prior to the date
on which the leave commenced."  29 U.S.C. § 2614(a)(2)-(3).
Although not explicitly stated in the Act, the statute clearly
manifests a general intent by Congress that such FMLA leave
should not be "held against" the employee.  Therefore, this Court
arrives at the judicial intersection of two statutes that are
often implicated by similar circumstances: the FMLA and the ADA.
In turn, the following issue is presented for this Court to
decide:  whether an employee's leave taken pursuant to the
Federal and Medical Leave Act may be held against the employee in
determining whether Plaintiff can perform the "essential
function" of attending a job within the meaning of the American
with Disabilities Act.  This Court holds that it may.

        The Fourth Circuit nor any other Circuit has decided
this specific issue, but nevertheless, regulations issued under
the FMLA provide significant guidance on the ADA's interaction
with the FMLA:

> Nothing in the FMLA modifies or affects any
> Federal or State law prohibiting
> discrimination on the basis of . . .
> disability.  FMLA's legislative history

> explains that FMLA is "not intended to modify
> or affect the . . . Americans with
> Disabilities Act of 1990, or the regulations
> issued under the act."

29 C.F.R. § 825.702.  This regulation is directly on point, as it explicitly provides that the FMLA does not modify the ADA in any form.  This leads this Court to conclude that the statutes should be read independently, and if an employee cannot perform the essential function of attendance, even if due to FMLA leave, then the employee is still not a "qualified individual" within the meaning of the ADA.  To rule otherwise would be a judicial expansion of a Plaintiff's rights under the ADA and run directly contrary to § 825.702.[5]

It is important to note that, even though the ADA may not be available, the plaintiff that experiences adverse employment actions for utilizing FMLA leave is not without recourse.  Congress still protects such individuals by creating sufficient rights under the FMLA in providing a cause of action

---

[5]  The conclusion to read the statutes independently is buttressed by the Eighth Circuit's decision in *Spangler v. Federal Home Loan Bank of Des Moines*, where the court stated:

> [t]he rights created under the FMLA are fundamentally
> different than those granted under the ADA.  One of
> Congress's purposes in enacting the ADA involved
> eliminating the discrimination qualified individuals
> face in their day to day lives.  In contrast, the FMLA
> was created, in part, because of inadequate job security
> for employees who have serious health conditions that
> prevent them from working temporary periods.

278 F.3d 847, 852 (8th Cir. 2002).  Although the Eighth Circuit was not addressing this specific issue of whether FMLA leave can be considered in the "qualified individual" determination, this guidance argues strongly in favor of the statutes remaining completely independent.

for any discrimination or retaliation by an employer against an employee for taking FMLA leave.

In sum, in accord with the relevant regulation, this Court must read the FMLA and the ADA as independent and separate Congressional provisions.  As such, leave taken pursuant to the FMLA, although completely protected under the FMLA, may be considered in the determination of whether a plaintiff can perform the "essential functions" of one's job (*i.e.* attending), and in turn, whether he is a qualified employee with a disability under the ADA.

Since attendance is an essential function of Plaintiff's job, and further, since it is undisputed that Plaintiff was continuously and unpredictably absent due to FMLA leave, this Court holds that Plaintiff cannot perform the essential functions of his job.  As such, he is not a "qualified individual" within the meaning of the ADA, unless such functions can be performed with reasonable accommodation.

### (2) Would a reasonable accommodation enable Plaintiff to perform such essential function?

Next, since Plaintiff cannot perform the essential functions of his job (*i.e.* attendance), the Court must examine whether any reasonable accommodation would enable him to perform this function.  Defendant characterizes Plaintiff's proposed accommodation such that "he be permitted to come to work late, leave early, and take off whenever necessary."  (Deft.'s Mot.

Summ. J., 17).  In Plaintiff's words, he simply wanted to ensure that he could miss work without losing his job.

An accommodation, however, is unreasonable if it requires elimination or reallocation of an essential duty or imposes an undue hardship on an employer.  29 C.F.R. §§ 1630.2(o), 1630.15(d); *Hall v. United States Postal Serv.*, 857 F.3d 1073, 1078 (6th Cir. 1988).  This proposed accommodation effectively relieves Plaintiff from the need to perform the essential function of his coming to work and doing his job, and therefore, it cannot be a reasonable accommodation.  If the employer were to comply, necessary repair and maintenance on the County's vehicle fleet either would not be performed or his fellow employees would have to work harder or longer to ensure that the work is adequately completed.  As stated above, such re-allocation is not reasonable.  *See* 29 C.F.R. §§ 1630.2(o); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir. 1996)("Reasonable accommodation does not encompass reallocation of essential job functions."); *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1125 (10th Cir. 1995).  Accordingly, Plaintiff's requested accommodation is unreasonable.

In sum, this Court finds that, since regular attendance is an essential job function of which Plaintiff is incapable and since any proposed accommodation is unreasonable, Plaintiff is not a "qualified individual with a disability" within the

Americans with Disabilities Act.  Accordingly, summary judgment is appropriate for the corresponding claims under the ADA in Counts III through VI.

### D.  Fairfax County Human Rights Ordinance

Plaintiff also briefly mentions the Fairfax County Human Rights Ordinance contained in Chapter 11 of the County Code.  As the Fourth Circuit held in *Lawrence v. Mars*, the Fairfax County Human Rights Ordinance does not create a private right of action, but only provides that a complaint may be filed with the Fairfax County Human Relations Commission.  955 F.2d 902, 906-07, (4th Cir. 1992).  Accordingly, summary judgment is appropriate to Plaintiff's claims under the Fairfax County Human Rights Ordinance.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted in full.  An appropriate Order will issue.


November 1st, 2006                 _____/s/_____
Alexandria, Virginia                    James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE